Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHALITHA ODAY, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CMC MATERIALS, INC., WILLIAM P. NOGLOWS, DAVID H. LI, RICHARD S. HILL, BARBARA A. KLEIN, PAUL J. REILLY, SUSAN M. WHITNEY, GEOFFREY WILD, and ANNE K. ROBY, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Shalitha Oday ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.     This is an action against CMC Materials, Inc. ("CMC" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of CMC by Entegris, Inc. ("Entegris").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of CMC common stock.

7. Defendant CMC, together with its subsidiaries, provides consumable materials to semiconductor manufacturers, and pipeline and adjacent industry customers in North America, Asia, Europe, the Middle East, Africa, and South America. The Company is incorporated in

Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "CCMP."

8. Defendant William P. Noglows ("Noglows") is Chairman of the Board of the Company.

9. Defendant David H. Li ("Li") is President, Chief Executive Officer, and a director of the Company.

10. Defendant Richard S. Hill ("Hill") is a director of the Company.

11. Defendant Barbara A. Klein ("Klein") is a director of the Company.

12. Defendant Paul J. Reilly ("Reilly") is a director of the Company.

13. Defendant Susan M. Whitney ("Whitney") is a director of the Company.

14. Defendant Geoffrey Wild ("Wild") is a director of the Company.

15. Defendant Anne K. Roby ("Roby") is a director of the Company.

16. Defendants Noglows, Li, Hill, Klein, Reilly, Whitney, Wild, and Roby are collectively referred to herein as the "Individual Defendants."

17. Defendants CMC and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On December 15, 2021, CMC and Entegris announced a definitive merger agreement under which Entegris would acquire CMC in a cash and stock transaction. Under the terms of the agreement, CMC shareholders will receive $133.00 in cash and 0.4506 shares of Entegris common stock for each share of CMC common stock they own. The press release announcing the Proposed Transaction states, in pertinent part:

3

### Entegris to Acquire CMC Materials to Create a Leader in Electronic Materials

*Adds Leading CMP Products and Technology to Entegris' World-Class Solutions Set, Creating a Comprehensive Electronic Materials Platform*

*Highly Complementary Combined Portfolio Expands Served Markets and Content per Wafer Opportunity*

*Opportunity to Unlock Growth and Profitability through Enhanced Innovation, Scale, Execution and Revenue Synergies*

*Expected to be Significantly Accretive to Non-GAAP EPS in Year 1; Generates $75 Million in Run-Rate Cost Synergies and $40 Million of CapEx Synergies within 12-18 Months from Closing*

*Entegris and CMC Materials to Host Conference Call Today at 8:00 a.m. EST*

December 15, 2021 11:21 AM Eastern Standard Time

BILLERICA, Mass. & AURORA, Ill.--(BUSINESS WIRE)--Entegris, Inc. (NASDAQ: ENTG) and CMC Materials, Inc. (NASDAQ: CCMP) today announced a definitive merger agreement under which Entegris will acquire CMC Materials in a cash and stock transaction with an enterprise value of approximately $6.5 billion.

Under the terms of the agreement, CMC Materials shareholders will receive $133.00 in cash and 0.4506 shares of Entegris common stock for each share of CMC Materials common stock they own. The total per share consideration represents a 35% premium over CMC Materials' closing price on December 14, 2021, and a 38% premium to the 10-day volume weighted average share price. Upon completion of the transaction, Entegris shareholders will own approximately 91% of the combined company and CMC Materials shareholders will own approximately 9%.

\*   \*   \*

**Additional Terms, Financing and Approvals**

The transaction is to be financed with a combination of equity issued to CMC Materials, new debt and cash on hand. Entegris has obtained fully committed debt financing from Morgan Stanley Senior Funding, Inc.

The transaction is not subject to a financing condition.

4

The transaction is expected to close in the second half of 2022, subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by CMC Materials shareholders.

**Advisors**

Morgan Stanley & Co. LLC is serving as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to Entegris. Goldman Sachs & Co. LLC is serving as financial advisor to CMC Materials, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

*   *   *

**About Entegris**

Entegris is a world-class supplier of advanced materials and process solutions for the semiconductor and other high-technology industries. Entegris has approximately 6,600 employees throughout its global operations and is ISO 9001 certified. It has manufacturing, customer service, and/or research facilities in the United States, Canada, China, France, Germany, Israel, Japan, Malaysia, Singapore, South Korea, and Taiwan. Additional information may be found at www.entegris.com.

**About CMC Materials**

CMC Materials, Inc., headquartered in Aurora, Illinois, is a leading global supplier of consumable materials primarily to semiconductor manufacturers. The company's products play an important role in the production of advanced semiconductor devices, helping to enable the manufacture of smaller, faster and more complex devices by its customers. CMC Materials is also a leading provider of performance materials to pipeline operators. The company's mission is to create value by delivering high-performing and innovative solutions that solve its customers' challenges. The company has approximately 2,200 employees globally.

19. On January 28, 2022, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

20. The Proxy Statement, which recommends that CMC shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) CMC's

and Entegris' financial projections; and (ii) the financial analyses performed by CMC's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion.

21. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the CMC Board of Directors; CMC's Reasons for the Merger; (ii) Opinion of CMC's Financial Advisor; and (iii) Certain Unaudited Prospective Financial Information.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the March 3, 2022 shareholder vote on the Proposed Transaction, CMC shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning CMC's and Entegris' Financial Projections**

23. The Proxy Statement omits material information concerning CMC's and Entegris' financial projections.

24. With respect to CMC's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) CMC's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25. The Proxy Statement also fails to disclose Entegris' financial projections.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of CMC and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's

financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Analyses

29. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs.

30. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 14, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

underlying the (i) discount rates ranging from 9.50% to 11.50%, (ii) perpetuity growth rates ranging from 3.00% to 4.00%, and (iii) multiples ranging from 8.8x to 13.6x; (2) the terminal values for CMC; (3) the net debt of CMC as of September 30, 2021; and (4) the number of fully diluted outstanding shares of CMC.

31. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) multiples of 12.0x to 15.00x, and (ii) discount rate of 11.50%; (2) the assumed amount of net debt; and (3) the projected year-end fully diluted shares of CMC common stock outstanding.

32. With respect to Goldman Sachs' "*Selected Precedent Transactions Multiples Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each transaction Goldman Sachs observed in its analysis.

33. With respect to Goldman Sachs' "*Premia Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

34. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

35. Without the information described above, the Company's shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
## For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
## Against All Defendants

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

38. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

39. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

10

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: February 14, 2022                  Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*